**UNITED STATES ex rel. Benjamin REID,**
Petitioner-Appellant,

v.

**Mark S. RICHMOND, Warden,**
Respondent-Appellee.

No. 225, Docket 25809.

United States Court of Appeals
Second Circuit.

Argued Feb. 5, 1960.

Decided April 20, 1960.

William D. Graham, Hartford, Conn., for appellant.

John D. LaBelle, State's Atty. for Hartford County, Manchester, J. Read Murphy, George D. Stoughton, Asst. State's Attys. for Hartford County, Hartford, for appellee.

Before MEDINA and WATERMAN, Circuit Judges, and MADDEN, Judge, U. S. Court of Claims.*

WATERMAN, Circuit Judge.

This is an appeal from an order of Judge J. Joseph Smith of the District Court of Connecticut discharging after a hearing a writ of habeas corpus previously issued. Judge Smith granted

* Sitting by designation.

the certificate of probable cause required by 28 U.S.C. § 2253 so that relator could appeal.

Benjamin Reid is about to be executed pursuant to a death sentence imposed in June 1957 after his Connecticut conviction for the crime of murder in the first degree. The conviction was affirmed by the Connecticut Supreme Court of Errors. State v. Reid, 1959, 146 Conn. 227, 149 A.2d 698.

Although no application for certiorari was made to the United States Supreme Court after the affirmance of the conviction by the Connecticut Supreme Court of Errors, Judge Smith's holding is unchallenged that under the circumstances present here relator has exhausted all the state remedies available to him.

Relator presents three claims of alleged denial of due process of law. *First*, he was forced to proceed to trial with counsel he did not want; *Second*, there was a prejudicial delay in the assignment of counsel to him; and *Third*, the Public Defender system of the State of Connecticut is unconstitutional.

We consider the third point first. We agree with Judge Smith that even though the Public Defender is appointed by the same judges who will hear the cases in which he participates, and even though those same judges fix the Public Defender's salary and term of office, the Connecticut Public Defender system is not violative of due process.

As to the first two contentions, however, we are of the opinion that they can only be decided on the basis of the complete state transcript—a transcript not before Judge Smith and therefore not considered by him. Our reasons for so holding are made clear by a statement of the facts concerning relator's legal representation at various pretrial proceedings, and, subsequently, at the trial itself.

On January 15, 1957 Reid was arrested by New Haven police in connection with the murder in Hartford on the preceding day of a Florine McCluney. He was brought before the Police Court in Hartford and was ordered held without bond. Twenty-two days later, on February 6th, he was in attendance at a coroner's inquest, and, after having been advised of his constitutional right to remain silent, but perhaps not of his right to counsel, he gave a detailed statement in which he fully confessed to the crime. On March 7th he appeared and testified before the Grand Jury and was indicted for murder in the first degree. Reid was a minor of 19 years, and so James Cosgrove, the Public Defender of Hartford County, was appointed his guardian *ad litem*. Cosgrove was present during some of the Grand Jury proceedings. Four weeks later, on April 1st, Reid wrote to the judge of the Superior Court stating that he did not wish to accept the Public Defender and wanted one Thomas McDunnugh [sic] assigned. On April 5th Reid appeared in court and was advised that he could retain any counsel he wanted, but that the court would only assign James Cosgrove, the Public Defender. The official assignment of Mr. Cosgrove was then made, although he may have been acting in Reid's behalf prior to that time on the assumption that he would be assigned. On April 26th William Graham, who now represents relator, was assigned as Special Assistant Public Defender, and on May 17th Mr. Cosgrove moved to be discharged as counsel because he could get no cooperation from Reid who had told him that he did not want him to act in his behalf.

In June 1957 Reid went on trial, was convicted, and on June 15th was sentenced. The defense at trial had been conducted by Mr. Cosgrove with Mr. Graham present at the counsel table. It appears from the record before us that Reid continued to object to Mr. Cosgrove, either personally or because he was the Public Defender, and that he would discuss his case only with Mr. Graham.

From the brief chronology given above, it is probable that constitutional questions would be present in this situation if there had been a delay in assigning counsel. The briefs and arguments

in the District Court and in this Court indicate that several confessions and admissions had been made by Reid to police officers after arraignment but prior to assignment of counsel; and that these had been introduced at the trial. Inasmuch as the trial transcript was not introduced into evidence at the habeas corpus hearing before the district judge, and therefore is not before us on appeal, we have no knowledge of its contents or of the circumstances surrounding the making of these damaging statements that at trial were testified to, by others. The Findings of Fact made by the state trial judge shed some light on their contents, but due to the absence of the trial transcript, which we assume to be still available, we are reluctant to give these findings any consideration. United States ex rel. Jennings v. Ragen, 1958, 358 U.S. 276, 79 S.Ct. 321, 3 L.Ed.2d 296, although concerned with reliance on bare state findings to determine whether or not a hearing should be held, is enough to make us wary of such a proceeding.

Although we note that Connecticut law provides that a person suspected and under investigation in a homicide case is entitled to have counsel present at a coroner's inquest, Conn.Rev.Gen.Stat. § 6–62 (1958), Reid was without counsel at such an inquest three weeks after his arrest and made highly incriminating statements there in answer to the coroner's questions.

This is a capital case and the rule set forth in Crooker v. California, 1958, 357 U.S. 433, 439, 78 S.Ct. 1287, 1292, 2 L.Ed.2d 1448, rehearing denied, 358 U.S. 858, 79 S.Ct. 12, 3 L.Ed.2d 92, is controlling. A defendant is denied due process of law if:

" * * * he is deprived of counsel for any part of the pretrial proceedings, provided that he is so prej-

udiced thereby as to infect his subsequent trial with an absence of 'that fundamental fairness essential to the very concept of justice.' " [1]

On the present state of the record we cannot determine when Reid was first advised of his right to counsel, or if such advice was needed to make him aware of his right. Whether Reid was "prejudiced thereby," the crucial finding, can be determined only after these initial facts are learned.

With reference to the relator's claim that he was forced to go to trial represented by counsel whom he had repudiated, we do not discover such an affirmative repudiation as would indicate to the state trial judge that Reid's objections to Mr. Cosgrove, as set forth in his letter of April 1st to the Superior Court, were more than an expression of displeasure with the Public Defender system, or an indication of a preference for a specific attorney the court was under no obligation to assign.

If, upon remand, it appears that Reid unequivocally repudiated Mr. Cosgrove, then counsel may go forward on the question of whether the appointment of Mr. Graham as Special Assistant Public Defender was sufficient to protect the defendant's right to counsel, and whether any other reasonable alternative was permitted by the defendant's conduct.

Accordingly, we have no option here other than to remand the case to the district court for reconsideration on this issue also.

The district court order discharging the writ is vacated, and the case is remanded for further proceedings not inconsistent with this opinion.

In view of the emergency here present our mandate shall issue forthwith; and the execution of the relator is stayed pending final disposition of these proceedings.

---

1. See, also, Spano v. New York, 1959, 360 U.S. 315, 326, 79 S.Ct. 1202, 3 L.Ed.2d 1265, concurring opinion of Mr. Justice Stewart.